# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

CNB BANCSHARES, INC., )
    Plaintiff, )
 )
v. ) No. 3:09-CV-33
 ) (Phillips)
STONECASTLE SECURITIES LLC, )
    Defendant. )

## MEMORANDUM OPINION

This diversity action arises out of a Confidential Letter Agreement entered into by the parties on June 19, 2007, for the sale of capital securities. Plaintiff CNB Bancshares Inc. has sued defendant StoneCastle Securities LLC alleging: (1) breach of contract; (2) misrepresentation, fraud and bad faith; and (3) violation of the Tennessee Consumer Protection Act. Before the court is defendant Stonecastle's motion for summary judgment.

In its motion, StoneCastle asserts that the Confidential Letter Agreement permitted StoneCastle to conduct due diligence as a condition precedent to closing. StoneCastle conducted further due diligence after signing the Confidential Letter Agreement and determined, based upon its underwriting criteria, that CNB did not satisfy the due diligence requirements of the securities at issue. StoneCastle asserts the Confidential Letter Agreement permitted StoneCastle not to close the transaction if due

diligence was unsatisfactory in its judgment. In addition, because all factual allegations made by CNB occurred in the performance of the Confidential Letter Agreement, StoneCastle asserts CNB has no claim for misrepresentation, fraud, or the Tennessee Consumer Protection Act as a matter of law. Last, StoneCastle asserts that the damages claimed by CNB are speculative. CNB bases its alleged damages on the hypothetical price of closing on a similar securities issuance; however, StoneCastle alleges that CNB did not enter into or attempt to enter into such a transaction and therefore did not actually suffer any damages. Rather, StoneCastle avers that CNB bases its calculations on inexact data and information provided by a third party to speculate as to what damages CNB might have suffered if it had entered into a hypothetical transaction.

CNB, on the other hand, argues that StoneCastle breached its contractual obligations to purchase or arrange the purchase of CNB's capital securities on or before the settlement date set out in the Confidential Letter Agreement. CNB asserts that during the period following the effective date of the Confidential Letter Agreement, CNB duly performed, or offered to deliver performance of, the obligations under the terms and conditions of the Confidential Letter Agreement to be performed by CNB. CNB further asserts that StoneCastle anticipatorily repudiated the Confidential Letter Agreement, failed and refused to perform its contract obligations, without justification and in bad faith.

## I. Background

Stonecastle and CNB entered into a Confidential Letter Agreement on June 21, 2007, relating to the issuance and purchase of CNB securities. The Confidential Letter Agreement states that it is "binding," but further states that StoneCastle's "obligations are subject to its due diligence review" of CNB. The due diligence process for CNB's proposed trust preferred stock issuance progressed as follows: on June 15, 2007, as part of its initial qualification for raising capital through issuing CNB securities, CNB responded to a 33-question Due Diligence Questionnaire sought by StoneCastle. Pursuant to its terms, the Due Diligence Questionnaire was the "initial step of the credit process" and StoneCastle reserved the right to request "follow-up due diligence."

By September 4, 2007, StoneCastle had requested, and CNB responded to a supplemental due diligence questionnaire. The request asked specifically about the updated, next quarter financials of CNB, its real estate backed loans, and details about the Bank's five largest loans (and risk exposures). One day later, StoneCastle asked eight follow up questions based upon CNB's September 4, 2007 response to the supplemental due diligence questionnaire. CNB responded in detail to these questions soon after. By email dated September 11, 2007, StoneCastle informed CNB that "due to the increased growth in the construction loans and the recent decline in the capital ratios, as well as other factors that have come to light as a result of our due diligence and current market conditions, we simply cannot proceed at this time" to purchase CNB's capital securities.

StoneCastle asserts that its obligations under the Confidential Letter Agreement were excused due to CNB failing to meet its underwriting criteria – a condition precedent to closing. Specifically, StoneCastle avers that CNB did not satisfy the underwriting standards because the value of the real estate securing a large portion of CNB's loans dramatically decreased as a result of the July 2007 sub-prime mortgage crash. The decrease in real estate values had a negative effect on assets secured by the real estate. As a result of CNB's failure to meet its underwriting criteria, StoneCastle elected not to proceed with the closing.

## II. Motion to Strike

StoneCastle has moved to strike the Errata Sheet to the deposition of Ann Bowers alleging the Errata Sheet contradicts Ann Bower's earlier deposition testimony. The court will first address StoneCastle's motion to strike because a decision on that motion will affect its decision on the motion for summary judgment.

The deposition of Ann Bowers, as the Rule 30(b)(6) representative for CNB, was conducted on February 29, 2012. On April 17, 2012, Bowers signed an Errata Sheet changing certain portions of her testimony. The Errata Sheet states:

> Q. Okay. Well, it's your opinion that, you know, StoneCastle breached this agreement, and so my question is, do you have any evidence, okay, that StoneCastle didn't think – that StoneCastle thought it was doing anything more than what it was entitled to do as part of the due diligence?
>
> A. I do not have any evidence of that.
> [Errata: I do not have any evidence of that which was communicated directly from StoneCastle to CNB.]

4


Case 3:09-cv-00033-TWP-HBG   Document 72   Filed 07/13/12   Page 4 of 14   PageID #: 1106

Q. Okay. so you don't have any evidence that StoneCastle said or was contemplating purposely breaching the agreement, do you?

A. I have evidence that they did breach the agreement, but I don't have evidence that they were having discussions saying that they intended to breach the agreement.
[Errata: but I don't have evidence that they were having discussions saying that they intended to breach the agreement that were communicated directly from StoneCastle to CNB.]

Q. Okay. And that's – you have no evidence that StoneCastle intended to breach the agreement, correct?

A. No, I don't have evidence of that, no.
[Errata: No, I don't have evidence of that which was communicated directly from StoneCastle to CNB.]

Q. Okay. And you don't have any evidence that StoneCastle was doing – did anything other than what it thought it was entitled to.

A. I do not have any evidence.
[Errata: I do not have any evidence of that which was communicated directly from StoneCastle to CNB.]

Explanation: I was confused with Mr. Colocotronis' line of questioning involving evidence of StoneCastle's intent to breach the Confidential Letter Agreement. When responding to these questions, I interpreted "evidence" of StoneCastle's intent to breach as evidence which was directly communicated to CNB from StoneCastle or one of StoneCastle's agents that it intended to breach the confidential letter agreement. Upon reviewing my statements in my deposition, the above changes need to be made to reflect my responses to how I perceived these questions. I believe StoneCastle intentionally breached the agreement by the overall facts and circumstances surrounding this case.

First, Rule 30(e) of the Federal Rules of Civil Procedure provides that a deponent must be allowed an opportunity to review and make changes to a deposition transcript, provided the deponent requests such opportunity before the deposition is

completed. Here, no request to read and review the deposition transcript was made by any party during the deposition of Ann Bowers. Therefore, CNB had no right to submit an errata sheet making changes to the deposition testimony of Bowers.

Second, the Sixth Circuit holds "that a party may not create a genuine issue of material fact by filing an affidavit to defeat a motion for summary judgment that contradicts his earlier testimony." *See Penny v. United Parcel Service,* 128 F.3d 408, 415 (6th Cir. 1997); *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453 (6th Cir. 1986). A directly contradictory factual statement should be stricken unless the nonmoving party "provides a persuasive justification for the contradiction." *Aerel, S.R.L. v. PCC Airfoils LLC*, 448 F.3d 899, 907 (6th Cir. 2006). To determine whether the statement is meant to create a "sham" issue of fact, a court should consider "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion that the affidavit attempts to explain." *Id.*

As shown above, Bowers repeatedly testified that she did not have any evidence that StoneCastle intended to breach the Confidential Letter Agreement, but now claims in her Errata Sheet that she was confused by the questioning of StoneCastle's counsel and that she interpreted "evidence" of StoneCastle's intent to breach as evidence which was directly communicated to CNB from StoneCastle, or one of StoneCastle's agents, that it intended to breach the Confidential Letter Agreement. The court finds CNB's assertion that Bowers was "confused" unpersuasive and agrees that the Errata Sheet

6

contradicts her deposition testimony and constitutes an attempt to create a post-motion "sham" disputed issue of material fact. *See Trout v. FirstEnergy Gen. Corp.,* 339 Fed.Appx. 560, 565-66 (6th Cir. July 30, 2009) ("Rule 30(e) does not allow one to alter what was said under oath"). Accordingly, StoneCastle's motion to strike is **GRANTED.** The court has not considered the Errata Sheet in deciding the pending motion for summary judgment.

### III. Standard for Summary Judgment

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of showing the absence of a genuine issue of fact rests with the moving party. *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). At this stage, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

However, summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of that party's case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995). "The mere existence of a scintilla of evidence to support the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

## IV. Breach of Contract

A party asserting a breach of contract claim in Tennessee must show (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of contract, and (3) damages caused by the breach of contract. *C&W Asset Acquisition LLC v. Oggs*, 230 S.W.3d 671, 767-77 (Tenn.Ct.App. 2007).

Here, the Confidential Letter Agreement included a condition precedent to performance, which subjected all obligations of StoneCastle to its continued due diligence: "[StoneCastle]'s obligations are subject to its due diligence review of CNB." CNB argues that the provision referring to due diligence review was not a condition precedent, but rather a term of the binding contract as to which the implied duty of good faith and fair dealing applied.

Under Tennessee law, a condition precedent is "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn.Ct.App. 1986) (quoting Restatement 2d Contracts, § 244). Where a condition precedent to a contract is unsatisfied, there is no duty to perform because there is no enforceable agreement. *Upperline Equip. co. v. J&M Inc.,* 724 F.Supp.2d 883, 889 (E.D.Tenn. 2009).

Tennessee law recognizes a broad definition of "due diligence" as a term of art that depends on the underlying transaction at issue:

8

> Due diligence is defined as "such a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case.

*Huntington Nat'l Bank v. Hooker*, 840 S.W.2d 916, 919 n. 4 (Tenn.Ct.App. 1991) (quoting Black's Law Dictionary). In this case, the transaction contemplated by the Confidential Letter Agreement involved the issuance and underwriting of trust preferred securities of CNB. The decision to proceed depended on the underlying credit-worthiness and balance sheet of CNB. StoneCastle conducted due diligence as permitted by the Confidential Letter Agreement. Specifically, StoneCastle states that it sought to gauge CNB's exposure to real estate secured loans following the collapse of the real estate market. Because the value of CNB's assets were reduced due to its real estate secured loans, CNB failed to satisfy the due diligence requirements of StoneCastle. CNB has produced no material issues of fact to contradict StoneCastle's assertion that CNB failed to qualify under its underwriting standards. Further, CNB makes no allegation that it actually met the underwriting criteria for StoneCastle, or that StoneCastle failed to close after CNB satisfied the underwriting criteria. Because the undisputed facts show that CNB failed to satisfy the condition precedent of the Confidential Letter Agreement, StoneCastle had no duty to perform. Accordingly, StoneCastle is entitled to judgment as a matter of law on CNB's claim for breach of contract.

## V. Breach of the Implied Duty of Good Faith and Fair Dealing

Count II of CNB's amended complaint contains allegations rising from actions taken subsequent to the execution of the Confidential Letter Agreement. These allegations, including misrepresentation, fraud, bad faith, breach of implied duty of good faith and fair dealing, as well as violation of the Tennessee Consumer Protection Act, arise from StoneCastle's actions in conducting due diligence and deciding not to close on the transaction.

In Tennessee, "parties to a contract owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract." *Barnes v. Robinson Co. v. OneSource Facility Servs. Inc.*, 195 S.W.3d 637, 642 (Tenn.Ct.App. 2006). The implied obligation of good faith and fair dealing does not, however, create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement. *Id.* A claim for breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, but rather "may be an element or circumstance of recognized torts, or breaches of contracts." *Upperline Equip. Co.,* 724 F.Supp.2d at 892 (quoting *Solomon v. First am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 945 (Tenn.Ct.App. 1989)); *see also Wyndham Vacation Resorts,* 2009 WL 18884058 at *5 (E.D.Tenn. June 30, 2009) (a claim for breach of the implied covenant "is just a part and parcel of the breach of contract claim"). Because CNB's claim for breach of the implied covenant of good faith and fair dealing rests upon the same allegations that are the subject of the breach of contract claim, it too, fails for the same reasons discussed above. Accordingly,

10

StoneCastle is entitled to judgment as a matter of law on CNB's claim for breach of the implied covenant of good faith and fair dealing.

In addition, CNB's bad faith claim must be dismissed because Tennessee law does not recognize an independent tort of bad faith, citing *Solomon v, First American Nat'l Bank of Nashville*, 774 S.W.2d 935, 945 (Tenn.Ct.App. 1989) ("Research disclosed that good faith or the lack of it may be an element or circumstance of recognized torts, or breaches of contracts, but it does not appear that good faith, or the lack of it is, standing alone, an actionable tort"); *see also Federated Rural Elec. Ins. Exchange v. Hill*, 2007 WL 907717 at *7 (Tenn.Ct.App. 2007) ("there is no valid tort of bad faith . . ."); *Oak Ridge Precision Industries, Inc. v. First Tennessee Bank Nat'l Ass'n*, 835 S.W.2d 25, 29-30 (Tenn.Ct.App. 1992) ("to the extent that plaintiff alleges an independent tort, it fails to state a claim on which relief can be granted"). Accordingly, to the extent that the amended complaint attempts to state a claim for "bad faith", independent of the breach of contract claim, StoneCastle is entitled to judgement as a matter of law on CNB's "bad faith" claim.

### VI.  Fraud or Misrepresentation

To succeed on a claim for "intentional or fraudulent" misrepresentation, CNB must show:

> (1) defendant made a representation regarding a present or past fact; (2) the representation was false; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or recklessly; (5) plaintiff actually relied on the misrepresentation of the material fact; (6) such reliance was reasonable under the

circumstances; and (7) plaintiff suffered damages as a result of such reliance.

*Edwards v. Bruce*, 1996 WL 383294 at *8 (Tenn.Ct.App. 1996) (citing *Metropolitan Gov't of Nashville v. McKinney* 852 S.W.2d 233, 237 (Tenn.Ct.App. 1992)).

Here, CNB's claims of fraud and misrepresentation are based upon StoneCastle's non-performance of the Confidential Letter Agreement. During the Rule 30(b)(6) deposition of Ann Bowers, CNB's CFO, Bowers testified that CNB had no evidence that StoneCastle intended to breach the Confidential Letter Agreement. The record contains no evidence that StoneCastle acted in bad faith or committed fraud in conducting its due diligence review of CNB. Accordingly, StoneCastle is entitled to judgment as a matter of law on CNB's fraud and misrepresentation claims.

### VII. Tennessee Consumer Protection Act

In order to recover under the Tennessee Consumer Protection Act (TCPA), CNB must prove "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA, and (2) that the defendant's conduct caused an ascertainable loss of money or property, real, personal, or mixed, or any other article or commodity, or thing of value wherever situated. . . ." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 114-15 (Tenn.Ct.App. 2005) (citing T.C.A. § 47-18-109(a)(1)). An act is "deceptive" if it involves a "material representation, practice or omission likely to mislead a reasonable consumer." *Davis v. McGuigan*, 325 S.W.3d 149, 162 (Tenn. 2010). Here, CNB bases its claim on two facts: (1) an email from StoneCastle, following the due diligence requests,

informing CNB that StoneCastle would not close "as a result of our due diligence and current market conditions," and (2) the fact that the Confidential Letter Agreement stated that it was "binding."  Neither of these acts is unfair or deceptive, and will not support a claim under the TCPA.

In its response to the motion for summary judgment, CNB points to a communication made after the alleged breach in which StoneCastle "expressed its willingness to reconsider the deal at another price" as proof of "fraud and deceit" in StoneCastle's reliance on the due diligence precedent.  Even if CNB's allegations are true, "a contract may be negligently or fraudulently breached and the cause of action remains in contract rather than tort."  *Mid-South Milling Co. v. Loret Farms Inc.,* 521 S.W.2d 586, 588 (Tenn. 1975).  Because there is no factual or legal basis for CNB's claim under the TCPA, Stonecastle is entitled to judgment as a matter of law on this claim.

## VIII.  Conclusion

For the reasons stated above, StoneCastle's motion to strike the Errata Sheet to the deposition of Ann Bowers [Doc. 52] is **GRANTED**.  The court further finds that StoneCastle is entitled to judgment as a matter of law on all claims asserted in the amended complaint. Accordingly, StoneCastle's motion for summary judgment [Doc. 41] is **GRANTED**, whereby this action is **DISMISSED.**

13

Any remaining motions are denied as moot.

**ENTER:**

     s/ Thomas W. Phillips
    United States District Judge